UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 09-20628-CR-GRAHAM/GOODMAN

UNITED STATES OF AMERICA,

v.

NELIDA RODRIGUEZ

     Defendant.

_____/

## REPORT AND RECOMMENDATIONS
## ON RESTITUTION FOR NELIDA RODRIGUEZ

THIS MATTER is before the Undersigned on the District Court's Order of Reference for a report and recommendations on restitution issues. [ECF No. 1278]. The Order specifically directs the Undersigned to consider Defendant Nelida Rodriguez's Motion for Resentencing to Effectuate Restitution Judgment [ECF No. 1231] and the Government's Motion for Hearing on Restitution [ECF No. 1274].

After continuing the evidentiary hearing two times at Rodriguez's request [ECF Nos. 1287; 1290], the Undersigned held the hearing on June 11, 2012 [ECF No. 1306]. The Undersigned also reviewed the supplemental post-hearing submissions by both the Government [ECF Nos. 1308; 1309; 1310; 1316] and Rodriguez [ECF No. 1315].

After reviewing the case file and the testimony and exhibits presented at the evidentiary hearing, the Undersigned respectfully recommends that the District Court

**deny** Rodriguez's Motion for Resentencing and **impose** restitution in the amount of $7,941,854.42 by entering an amended judgment.

## I.    INTRODUCTION

Rodriguez presents what she considers a unique set of circumstances to justify a **resentencing** (as opposed to entry of an amended judgment, which simply includes the restitution amount previously left open). Rodriguez argues that resentencing is necessary to "avoid a manifest injustice arising from the combination of uniquely prejudicial circumstances" surrounding the restitution component of her sentence. [ECF No. 1315, p. 15]. At bottom, Rodriguez takes the position that these circumstances generate equitable reasons to support a resentencing that she contends is necessary in order to "effectuate" the restitution component of her sentencing. But these reasons do not generate **legal authority** to warrant a resentencing.

Rodriguez does not argue that the delay precludes any type of restitution. Instead, she contends that restitution would be permissible, notwithstanding the delay and other circumstances, *if* it were accomplished in a formal resentencing.

The Undersigned recognizes that the circumstances here are atypical and that the restitution amount has not yet been determined more than two years after the sentencing hearing. But the Undersigned cannot recommend a resentencing simply because a defendant believes it would be helpful, or because a defendant would like another opportunity to revisit the underlying sentencing decision, or because some time

has elapsed before the restitution amount has been determined. To be sure, there are specific legal authorities which would permit a district court to resentence a defendant, but those authorities do not apply here and Rodriguez has not called the Undersigned's attention to any applicable legal authority which would provide justification for the requested resentencing.

## II.   BACKGROUND

### A. Rodriguez's Guilty Plea and Sentencing

On July 23, 2009, Rodriguez and 18 other defendants were indicted for myriad criminal charges arising from a mortgage fraud conspiracy. On January 19, 2010, Rodriguez pled guilty to Counts 1, 2 and 12 of the 20-count Indictment. [ECF No. 446].[1]

On April 27 and 28, 2010, the District Court held Rodriguez's sentencing hearing. [ECF Nos. 699; 703; 733; 734]. The probation officer determined that the applicable sentencing guidelines range was 78 to 97 months. [ECF No. 734, p. 48]. During the two-day sentencing hearing, Rodriguez challenged the amount of the loss, arguing that certain losses should not be attributable to her. The District Court, after concluding that the relevant conduct involves a minimum of $12 million, decided to impose a sentence *below* the guidelines range "in order to avoid disparity in sentencing" and in recognition of Rodriguez's cooperation with the Government. [ECF No. 734, pp. 46-69].

---

[1]    Specifically, she entered a guilty plea to conspiracy to commit mail and wire fraud (Count 1), mail fraud (Count 2), and wire fraud (Count 12).

3

On April 28, 2010 the District Court *orally* sentenced Rodriguez to 70 months imprisonment on each of the 3 counts, to be served concurrently, 3 years of supervised release, and a \$300 special assessment. [ECF No. 703]. Concerning restitution, the District Court unequivocally stated that "**mandatory** restitution is appropriate." [ECF No. 734, p. 55 (emphasis added)]. Noting that the victims' losses were not yet ascertainable, the District Court advised that it would set a date for the final determination of the victims' losses "not to exceed 90 days after sentencing." [ECF No. 734, p. 55]. On the very same day, Rodriguez's trial counsel filed a premature notice of appeal. [ECF Nos. 704; 706].

On April 30, 2010, the District Court entered its *written* "Judgment in a Criminal Case." [ECF No. 714]. The "Criminal Monetary Penalties" page of the judgment noted that "the determination of restitution is deferred until July 28, 2010" and that "an amended judgment in a criminal case (AO 245C) **will be entered** after such a determination." *Id.* at p. 3 (emphasis added). On May 3, 2010, Rodriguez's trial counsel filed an amended notice of appeal. [ECF No. 718].

### B. The Appointment of Rodriguez's Current Counsel

On May 28, 2010, Rodriguez's trial counsel's motion to withdraw was granted and Richard Klugh was appointed to represent Rodriguez in the appeal. [ECF No. 741]. However, in a written order dated July 28, 2010, the District Court noted that there had been an *ore tenus* request, presumably by Mr. Klugh, to be appointed as counsel in the

4

trial court "**for matters related to Defendant's restitution payments.**" [ECF No. 876 (emphasis added)]. The District Court granted the request and appointed Mr. Klugh to represent Rodriguez in the trial court and appellate court.[2] The CJA 20 Form appointing Mr. Klugh as counsel was uploaded on the CM/ECF system on August 2, 2010. [ECF No. 881]. The District Court's signature on the form, however, appears above the typed date of May 27, 2010.

### C. <u>Continuation of the District Court's July 28, 2010 Restitution Hearing</u>

On July 27, 2010, the Government, citing a trial scheduling conflict, filed a motion to continue the July 28, 2010 restitution hearing until August 6, 2010 or thereafter. [ECF No. 873].[3] In the motion, the Government noted that *Dolan v. United States*, 130 S. Ct. 2533 (2010), decided the prior month, held that a sentencing court that misses 18 U.S.C. § 3664(d)(5)'s 90-day restitution deadline nonetheless retains power to order restitution where the sentencing court, like the District Court here, made clear prior to the deadline's expiration that it would order restitution, leaving open only the amount. [ECF No. 873, p. 1]. The District Court granted the motion and noted that the restitution hearing would be rescheduled to "a date agreed upon by the parties." [ECF No. 880].

---

[2]      The docket sheet, however, does not reflect when the District Court received the oral request. Obviously, it had to be on July 28, 2010 or earlier.

[3]      In the motion, the prosecutor advised that she attempted to contact Mr. Klugh, but he could not be reached to state his position. This further supports the conclusion that Mr. Klugh made his *ore tenus* request to represent Rodriguez in the restitution proceeding prior to July 28, 2010.

### D. **The Motions Before the Undersigned**

On **June 30, 2011,** Rodriguez filed her Motion for Resentencing to Effectuate Restitution Judgment. [ECF No. 1231]. In the motion, Rodriguez relied upon *United States v. Kapelshnik*, 306 F.3d 1090 (11th Cir. 2002) for the proposition that where a district court fails to determine the amount of restitution within 90 days, the judgment of conviction contains no enforceable restitution provision. [ECF No. 1231, pp. 2-3]. According to Rodriguez, *Kapelshnik* suggests that the District Court should vacate its prior judgment and resentence her (restarting the 90 days) in order to have an enforceable restitution provision in the judgment. *Id.* at p. 3. Moreover, Rodriguez argued that at the resentencing the District Court should reconsider her 70-month sentence because many of her codefendants were acquitted at trial or received much shorter sentences after she entered her guilty plea. *Id.*

The Government filed a response in opposition and noted that the District Court's Order [ECF No. 880] continuing the restitution hearing was premised on *Dolan* and explained that in approximately one year neither party had conferred with the other to reschedule the restitution hearing. [ECF No. 1255, p. 2]. The Government took the position that, based on *Dolan*, a resentencing was not needed and that the only need is for a "completion of a sentencing to incorporate the restitution portion of the sentence." *Id.*

6

Rodriguez submitted a reply and argued that "in order for restitution to be ordered, Ms. Rodriguez must be resentenced." [ECF No. 1257, p. 2]. The reply did not cite *Dolan*. Instead, citing a 1996 case and a 1997 case,[4] Rodriguez argued that without resentencing the District Court could not enter an enforceable restitution provision "and thus resentencing, at which the Court can consider the entire sentencing package, is the appropriate course." *Id.* The reply, like her earlier motion, also urged the District Court to resentence Rodriguez to avoid sentencing disparity in light of the shorter sentences and acquittals of Rodriguez's codefendants. *Id.* at p. 1.

---

[4]     The two cases are inapposite. In *United States v. Stinson*, 97 F.2d 466 (11th Cir. 1996), a defendant was resentenced because the United States Supreme Court held that the Sentencing Guidelines commentary was binding and authoritative and the Eleventh Circuit then held that the specific Guidelines amendment applied retroactively to defendant's sentence and therefore vacated the sentence and remanded to the district court for resentencing. No such scenario is present here.

In *United States v. Boyd*, 131 F.3d 951 (11th Cir. 1997), the issue to be resolved on appeal was whether the convictions and sentences on both counts should be vacated (the position urged by the defendant) or whether only the conviction and sentence for the lesser included offense should be vacated. The appellate court held that the proper remedy for convictions on both greater and lesser included offenses is to vacate the conviction and sentence of the lesser included offense but to retain the convictions on the other counts and remand for resentencing because an illegal sentence disrupted the sentencing scheme. Thus, *Boyd* involved an incorrect conviction on a count, a situation not present here. Moreover, Rodriguez's argument presupposes that an amended judgment which fills in the amount of the restitution would be an illegal sentence and, thus, she must be resentenced. In light of *Dolan*, the Undersigned does not accept this assumption.

On January 30, 2012, the Government submitted a request to schedule the restitution hearing. [ECF No. 1274]. The District Court referred Rodriguez's motion for resentencing [ECF No. 1231] and the Government's request for a restitution hearing [ECF No. 1274] to the Undersigned. [ECF No. 1278].

### E. Delay of the Restitution Hearing Before the Undersigned

The Undersigned scheduled the restitution hearing for March 21, 2012. The duty magistrate judge on February 17, 2012 entered a writ of habeas corpus *ad testificandum* ordering the Marshal and Warden of FCI-Coleman to bring Rodriguez for the March 21, 2012 restitution hearing. [ECF No. 1282]. At the Marshal's request, the restitution hearing was rescheduled to March 29, 2012.

On March 27, 2012, **Rodriguez** filed an unopposed motion to reset the restitution hearing, asking the Undersigned to reschedule the hearing for April 17, April 19, or in May, in order to give her the opportunity to consult with counsel and review records and materials. [ECF No. 1287]. The Undersigned granted the motion and rescheduled the restitution hearing for April 17, 2012. [ECF No. 1288].

On April 16, 2012, the day before the restitution hearing which was continued at Rodriguez's request, **Rodriguez** filed a second motion to continue the restitution hearing. [ECF No. 1290]. Explaining that he had not had sufficient time to discuss all issues with his client and to review the voluminous record, defense counsel asked that the hearing be continued for 30 days. The Government opposed another continuance,

and the Undersigned reserved ruling until the hearing. [ECF No. 1291]. At the scheduled April 17, 2012 evidentiary hearing (where no testimony was actually taken because the substantive hearing did not occur), the Undersigned granted the motion and rescheduled the restitution hearing for June 11, 2012. [ECF Nos. 1293; 1296].

### F. The Restitution Hearing Before the Undersigned and the Post-Hearing Memoranda

The Undersigned held the evidentiary hearing on June 11, 2012. [ECF No. 1306]. During and after the hearing, the Undersigned directed the parties to submit supplemental memoranda concerning, among other issues, Rodriguez's renewed request for resentencing and whether the District Court had jurisdiction to resentence her. [ECF Nos. 1306; 1307]. The Government submitted its supplemental memoranda [ECF Nos. 1308; 1309; 1310; 1316], and Rodriguez did the same. [ECF No. 1315].

In her post-hearing supplemental memorandum, Rodriguez argued that: (1) resentencing is necessary to effectuate restitution because no restitution can be entered as the 90-day limitations period in 18 U.S.C. § 3664(d)(5) had expired; (2) the 26-month delay in having her appeal heard due to the instant restitution issue implicates her constitutional rights to a speedy sentencing and appeal; (3) Rodriguez was prejudiced because she was not represented by counsel during the 90-day limitations period; and (4) her 70-month sentence should be revisited in light of the fact that many of her codefendants were acquitted at trial or received much lesser sentences after she entered her guilty plea. [ECF No. 1315, pp. 1-5, 14-15].

CASE NO.: 09-20628-CR-GRAHAM/GOODMAN

III.   **LEGAL ANALYSIS**

   **A.** Legal Standard: *Dolan v. United States*, 130 S. Ct. 2533 (2010)

   Rodriguez's first argument is that resentencing is required because the District Court cannot simply amend the existing judgment in order to include the restitution amount, as more than 90 days has elapsed. Rodriguez ignores the Supreme Court's holding in *Dolan*.

   i.   **The Supreme Court's Holding in *Dolan v. United States*, 130 S. Ct. 2533 (2010)**

   In *Dolan*, the district court held a sentencing hearing on July 30, 2007 and sentenced the defendant to 21 months but did not order restitution because there was "'insufficient information on the record at this time regarding possible restitution payments that may be owed.'" *Dolan v. United States*, 130 S. Ct. 2533, 2536 (2010) (quoting the district court record). As a result, the district court *orally* stated that it would leave restitution open pending receipt of additional information and that the defendant could anticipate that a restitution award would be made in the future. *Id.* The district court entered the restitution order approximately nine months (April 24, 2008) after the sentencing hearing. *Id.* The defendant argued that because the district court had not ordered restitution within the 90-day period prescribed by 18 U.S.C. § 3664(d)(5), the district court could not enter an enforceable restitution provision. *Id.*

   In a 5-4 decision, the Supreme Court held that notwithstanding the statute's command, a district court retains power to order restitution beyond the statutory 90-

10

day deadline when it "made clear" before the deadline's expiration that it would order restitution. *Id.* at 2537.

### ii.   Applying *Dolan* to the Instant Facts

There is little doubt that the District Court, like the one in *Dolan*, "made clear" its intent to impose restitution long before the 90-day deadline expired.  First, at the sentencing hearing itself, the District Court noted that restitution is "mandatory" and therefore "appropriate." [ECF No. 734, p. 55]. Second, the District Court unequivocally advised that it **would** set a date to determine the amount of the victims' losses -- the determination used for restitution calculation purposes.  *Id.* Third, the criminal monetary penalties page of the written judgment noted that the determination of restitution would be deferred until July 28, 2010 – before expiration of the 90-day deadline. [ECF No. 714]. The written judgment also highlighted the fact that an amended judgment **will be entered** after the District Court determines the amount. [ECF No. 714].

Thus, the District Court repeatedly, both orally and in writing, advised Rodriguez that restitution would be part of her sentence. *Dolan*, of course, did not require that the "making clear" component be in writing. But the District Court here provided both oral and written notice about the restitution. To use the language from *Dolan*, the District Court "made clear prior to the deadline's expiration [90 days] that it would order restitution." *Dolan*, 130 S. Ct. at 2356.

CASE NO.: 09-20628-CR-GRAHAM/GOODMAN

Rodriguez cites *United States v. Placensio*, No. 10-20699-CR, 2011 WL 7807880 (S.D. Fla. June 28, 2011) *report and recommendations adopted by* 2012 WL 1606093 (S.D. Fla. May 8, 2012), as support for her theory that restitution cannot be imposed beyond the 90-day deadline. But *Placensio* is of no help.  First, unlike the scenario here, the opinion there does not explain that the district court made clear that restitution would in fact be imposed. *Id.* at *1. Second, the decision there was triggered by the fact that none of the victims stepped forward to participate in the restitution process. *Id.* at *3-5.  In other words, "the government at the restitution hearings had no evidence whatsoever regarding the propriety of restitution or the amount of restitution if the remedy were appropriate in the first place." *Id.* at *1.

In contrast to *Placensio*, the District Court here made it clear that restitution is appropriate and the Government presented evidence at the evidentiary hearing. In addition, almost all of the victims in the instant case participated in the restitution process by submitting declarations or other documents and evidence – a far cry from the situation in *Placensio*, where none of the victims opted to participate.

Thus, under *Dolan*, the District Court has authority to amend Rodriguez's judgment in order to impose the specific amount of the restitution it repeatedly advised would be entered.

### iii.   Delays in Ordering Restitution Post-*Dolan*

Rodriguez's second argument is that the 26-month delay in having her appeal heard due to the instant restitution issue implicates her constitutional rights to a speedy sentencing and appeal. [ECF No. 1315, p. 2]. To be sure, the Undersigned recognizes that a lengthy delay between sentencing and the restitution order may implicate a defendant's due process rights. However, under the peculiar circumstances of this case, Rodriguez cannot show that the delay implicated her due process rights.

"[T]he *Dolan* Court discussed and left open the remote possibility that a delay in setting a restitution hearing could prejudice a defendant and threaten his due process rights." *United States v. Brannon*, No. 11–13624, 2012 WL 1758998, at *3 (11th Cir. May 17, 2012). In *Dolan*, however, the Court rejected the defendant's argument that the over 8-month delay in having his appeal heard threatened his due process rights. *Dolan*, 130 S. Ct. at 2541-2542. In rejecting this argument, the *Dolan* Court held that a defendant who knows that restitution will be ordered must take some affirmative steps to mitigate the delay, such as advising the sentencing court of the statute and requesting that a timely restitution hearing be held, or even seeking mandamus to compel the sentencing court to hold the hearing. *Id.* at 2542. Moreover, the *Dolan* Court held that even where a defendant can show that he was prejudiced by the delay, the sentencing court should take that fact into account and "consider the reason for the delay and the party responsible for its cause, *i.e.*, whether the Government or the victim." *Id.*

13

CASE NO.: 09-20628-CR-GRAHAM/GOODMAN

Here, despite the *Dolan* Court's "blueprint" for defendants, Rodriguez, like the defendant in *Dolan*, has taken no affirmative steps to mitigate the delay in her restitution hearing, such as advising the District Court of the status and requesting a restitution hearing. In fact, nowhere in the various briefs does Rodriguez's counsel rebut the Government's allegation that **both** parties failed to confer for almost a year regarding a rescheduling of the restitution hearing [ECF No. 1255, p. 2], in spite of the District Court's Order to do so [ECF No. 880]. Additionally, despite the concurrent appellate proceeding, Rodriguez never requested mandamus to compel the District Court to hold the restitution hearing. Thus, as in *Dolan*, Rodriguez cannot show that she was prejudiced by the delay. Furthermore, even if she could show prejudice, Rodriguez cannot demonstrate that the Government is the party *solely* responsible for the delay -- and Rodriguez does not even make that allegation.  Rodriguez did ultimately file a motion for *resentencing*, but that is a different scenario, requested for strategic purposes, as outlined below.

The Undersigned has also conducted a cursory review of post-*Dolan* appellate decisions and finds that delays of several months between the sentencing hearing and restitution order are commonplace after *Dolan*. *See Brannon*, 2012 WL 1758998 (more than eight-month delay); *United States v. Fu Sheng Kuo*, 620 F.3d 1158 (9th Cir. 2010) (more than five-month delay); *United States v. Qurashi*, 634 F.3d 699, 705 (2d Cir. 2011) ("Although Qurashi argues that he was prejudiced by the delay [11 months], we find no

14

evidence of prejudice."); *United States v. Welebir*, 433 F. App'x 177 (4th Cir. 2011) (more than five-month delay).

Concerning Rodriguez's argument that her ability to obtain a timely appellate decision on the underlying appeal has been undermined, it was Rodriguez herself who filed a motion to stay the briefing schedule in the Eleventh Circuit Court of Appeals pending completion of the restitution issues.[5] Moreover, although Rodriguez filed monthly status reports with the appellate court concerning the status of the restitution issues, those reports were not filed in the District Court. Nor did Rodriguez remind the District Court of the open restitution matter or seek a restitution hearing until she filed her motion for resentencing on June 30, 2011, more than a year after the initial sentence was imposed. Furthermore, as noted, Rodriguez herself twice asked for the restitution hearing to be postponed. In addition, Rodriguez does not argue that the alleged due process violation precludes a restitution award. Instead, she argues that it must occur in a resentencing (where she hopes to challenge **other** aspects of the sentence, such as the term of imprisonment). But Rodriguez does not logically explain why a delay of the same duration would permit restitution in a resentencing but not in an amended judgment.

---

[5]     Motion to Stay Briefing Schedule Pending Completion of District Court Proceedings, *United States v. Rodriguez*, No. 10-12065-BB (11th Cir. Sept. 7, 2010).

Accordingly, while the Undersigned recognizes that the 26-month delay here is atypical, under the peculiar circumstances of this case and in light of *Dolan*, the Undersigned finds no evidence that Rodriguez's due process rights were prejudiced.

### B. 18 U.S.C. § 3582(c)

Under 18 U.S.C. § 3582(c), the District Court may not modify Rodriguez's sentence unless: (1) the Director of the Bureau of Prisons makes a motion to reduce her sentence (and the District Court makes other findings); (2) permitted by another statute or Fed. R. Crim. P. 35; or (3) Rodriguez's sentence was based on a sentencing range that was later lowered by the Sentencing Commission (and other requirements are met). *United States v. Phillips*, 597 F.3d 1190, 1195 (11th Cir. 2010). Options 1 and 3 above do not apply here and, as will be discussed, Fed. R. Crim. P. 35 is inapplicable to Rodriguez.[6]

### i. Federal Rule of Criminal Procedure 35(a)

Federal Rule of Criminal Procedure 35(a) permits resentencing "within 14 days after sentencing" to "correct" a sentence resulting from "arithmetical, technical, or other

---

[6]     Rodriguez contends that *In re United States*, 898 F.2d 1485 (11th Cir. 1990) supports her argument that resentencing (as opposed to amending the existing judgment) is required and permissible. But that case does not provide a basis for resentencing, as it merely stands for the simple rule that a sentence is considered imposed (for purposes of determining whether a Rule 35 motion is timely) when the trial court disposed of all counts, and not when a defendant was sentenced on only one of five counts. Moreover, it certainly does not stand for the proposition that the sentencing court cannot issue an amended judgment after an evidentiary hearing convened to obtain the evidence necessary to calculate the restitution amount.

clear error." Subsection (c) defines "sentencing" to mean "the oral pronouncement of the sentence." Regardless of whether the Undersigned uses the oral pronouncement of the sentence (April 28, 2010) or the written pronouncement in the judgment (April 30, 2010), the 14-day deadline to "correct" the sentence expired more than two years ago.

Moreover, as pointed out in *Dolan*, Rule 35(a) "does not apply" here because a sentencing judge's later order imposing the specific amount of restitution "d[oes] not 'correct' an 'error' in the sentence." *Dolan*, 130 S. Ct. at 2544. Instead, the procedure which the Undersigned is recommending here -- i.e., the one Rodriguez says cannot be followed because the 90-day deadline expired -- is the same one deemed permissible in *Dolan*: "fill in an amount-related blank in a judgment that made clear the restitution was 'applicable.'" *Id.*

### ii. Federal Rule of Criminal Procedure 35(b)

Fed. R. Crim. P. 35(b) permits a district court to resentence a defendant who provided "substantial assistance in investigation or prosecuting another person." Subsection (b) is inapplicable because the Government did not file a motion to reduce Rodriguez's sentence based on the requisite substantial assistance.

### C. Rodriguez's Other Arguments do not Justify Resentencing

#### i. Rodriguez's Purported Lack of Counsel During the 90 Days Following Sentencing

Rodriguez's third argument is that she had "no counsel with regard to her restitution issues" during the 90 days following her sentencing and was thus

prejudiced. As a threshold matter, Rodriguez's argument is factually incorrect. Rodriguez's trial counsel moved to withdraw on April 28, 2010. [ECF No. 705]. However, the motion was not granted until May 27, 2010, 29 days later. [ECF No. 741]. In the interim, Rodriguez's trial counsel continued to work on Rodriguez's matter by filing an amended notice of appeal on May 3, 2010 [ECF No. 718]. Thus, Rodriguez was represented by counsel for the first 29 days of the 90 days following sentencing.

The Undersigned notes that there appears to be a factual discrepancy as to precisely when Mr. Klugh, Rodriguez's instant counsel, was appointed to handle her restitution issues -- May 27, 2010 or July 28, 2010. *Supra* pp. 4-5; [ECF Nos. 876; 881]. Even assuming that Mr. Klugh was appointed on July 28, 2010 (the 91st day after her oral sentencing), Rodriguez fails to argue as to how or why she was prejudiced where her counsel failed to act at all with regards to her restitution matter for almost a year after his appointment.

For example, Mr. Klugh never alleges that he was unaware of the Government's motion to continue the July 28, 2010 restitution hearing. [ECF No. 873]. Despite knowledge of the continuance, nowhere in the various briefs does Rodriguez's counsel state that he objected to the continuance or rebut the Government's allegation that both parties failed to confer for almost a year regarding rescheduling the restitution hearing [ECF No. 1255, p. 2], in spite of the District Court's Order to do so [ECF No. 880].

18

Consequently, the Undersigned does not find that Rodriguez was prejudiced for the 61 days that she **may** have been unrepresented in her restitution proceedings.

### ii. The Post-Plea Acquittals and Shorter Sentences of Rodriguez's Codefendants

Finally, Rodriguez argues that resentencing would also be appropriate because her 70-month sentence could then be revisited in light of the fact that many of her codefendants were acquitted at trial or received much lesser sentences after she entered her guilty plea.

It is clear to the Undersigned that the primary motivation for Rodriguez's resentencing motion is not a challenge to the procedural mechanism used to implement the amount of the restitution. In fact, **Rodriguez never argues that the District Court cannot and should not impose a restitution amount.** Rather, Rodriguez's resentencing motion is a strategic backdoor attempt to have the District Court revisit the term of imprisonment and to lower it in a "resentencing" to address post-plea/post-sentencing developments. But Rodriguez cannot use the pending restitution issue to bootstrap her effort to reduce the term of imprisonment imposed in the original sentencing more than two years ago, because there is no authority to do so and because resentencing is not necessary to determine the amount of restitution and to include that amount in an amended judgment. Rodriguez does not persuasively explain how a restitution award entered more than two years after sentencing would be permissible if accomplished at a

resentencing, but a due process deprivation is generated if an amended judgment is entered after the same delay.

The Undersigned appreciates that Rodriguez may now regret the decision to enter a guilty plea, after some of her codefendants were later acquitted or received shorter sentences. It is not unusual for a defendant to enter a guilty plea and then later see that one or more codefendants obtain acquittals at trial on the same charges. To the contrary, these not unheard-of situations are merely *developments* which unfold after entry of a guilty plea. Calculating the risk of a conviction or the likelihood of an acquittal at trial are the assessments which defendants and their counsel must necessarily make when deciding whether to go to trial, or to enter into a plea agreement, or to plead "straight up" to the charges without an agreement with the Government.

Unfortunately for Rodriguez, the law is clear that the post-plea/post-sentencing developments she complains of do not, in the absence of other significant factors, create grounds for a resentencing or a withdrawal of a guilty plea. *United States v. Williams*, 261 F. App'x 251, 253 (11th Cir. 2008) (affirming sentence and stating that "[d]isparity between the sentences imposed on the codefendants is generally not an approved basis for relief."); *see also United States v. Chotas*, 968 F.2d 1193, 1198 (11th Cir. 1992); *United States v. Godwin*, 202 F.3d 969 (7th Cir. 1999) (defendant could not withdraw his guilty plea and his counsel was not ineffective merely because after his guilty plea other

defendants were acquitted or received shorter sentences); *cf. United States v. Picone*, 773 F.2d 224, 226 (8th Cir. 1985) (affirming order denying defendant's motion to withdraw guilty plea "because one of his codefendants has since been acquitted" and explaining that "a plea cannot be withdrawn simply because the defendant suddenly realizes he might be acquitted.")

## IV.    AMOUNT OF RESTITUTION

18 U.S.C. § 3664(e) provides that any dispute concerning the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. It also provides that the Government has the burden to demonstrate the amount of loss sustained by a victim as a result of the offense.

In meeting its burden, the Government may rely on hearsay evidence as long as the defendant is provided an opportunity to refute the evidence and the evidence bears "minimal indicia of reliability." *United States v. Hairston*, 888 F.2d 1349, 1353 (11th Cir. 1989) (approving the use of a letter written by the attorney for the victim bank at the sentencing/restitution hearing as evidence of the bank's loss). To show that the evidence lacks the requisite minimal indicia of reliability, a defendant must establish (1) that the challenged evidence is materially false, and (2) that it actually served as the basis for the sentence. *Hairston*, 888 F.2d at 1353. Framed by this rule, courts can consider testimony

of a law enforcement agent supported by victims' affidavits[7] and letters from the victims.[8] *See generally United States v. Bourne*, 130 F.3d 1444, 1447 (11th Cir. 1997) (deeming as acceptable for purposes of determining the restitution amount the special agent's testimony, which was based on his recollection of the bank auditor's report prepared on the day of the robbery).

At the hearing before the Undersigned, the Government elicited testimony from Special Agent Vivian Guerrero of the United States Postal Inspection Service. Agent Guerrero obtained letters and declarations from the original lenders, as well as lenders who now hold or service the loans which were fraudulently obtained. Agent Guerrero explained that she considered the recoveries (obtained when loans were sold at a discount) in the net loss figures. Defense counsel cross-examined Agent Guerrero at the hearing. After the Undersigned heard Agent Guerrero testify that she was not able to confirm the amount of the loss concerning one lender, the Undersigned directed the Government to submit post-hearing documentation outlining the amount of the unconfirmed losses from the one lender.

---

[7]    *United States v. Kalaycioglu*, 210 F. App'x 825 (11th Cir. 2006) (holding that district court did not err in relying upon agent's hearsay testimony, which was supported by affidavits, to support restitution of $2.02 million).

[8]    *United States v. Reese*, 998 F.2d 1275, 1282 (5th Cir. 1993) (noting that trial courts are accorded broad discretion in ordering restitution and that the court may consider affidavits and letters from the injured party and other minimally reliable hearsay).

CASE NO.: 09-20628-CR-GRAHAM/GOODMAN

The Government submitted the information [ECF No. 1309] and explained its amended (and reduced) calculation. Specifically, the Government noted that one lender, AHMSI, had loans from two lenders: Argent (which generated 7 loans) and First NLC (which generated 1 loan). Therefore, the Government recalculated the loss for restitution purposes by **eliminating** $2,629,859.07 for the AHMSI loans under Argent and also **eliminating** $484,220.82 for the AHMSI loan under First NLC. The Undersigned is not including these amounts in his restitution recommendation.

In addition, the Government further reduced its calculation by removing a loan for $17,754 which was inadvertently included on a list. The revised total is **$7,941,854.42.** The Undersigned is not persuaded by Rodriguez's theory that the restitution amount cannot be greater than the restitution amounts for other codefendants who cooperated with the Government. *United States v. Kalaycioglu*, 210 F. App'x 825 (11th Cir. 2006).

The Undersigned finds that the Government met its burden and concludes that $7,941,854.42 is the restitution amount.[9]

---

[9]     The Undersigned's conclusion does **not** include the purported loss sustained by Charles Bertelle, who was permitted to participate in the hearing by testifying about his alleged loss. Mr. Bertelle's alleged loss is too indirect to be considered for restitution purposes. Mr. Bertelle himself was not victimized by the fraud. Instead, Mr. Bertelle explained that he had received a contract offer from Magile Cruz (codefendant in another case) to buy his unit for $523,000. According to Mr. Bertelle, he ultimately refused to go through with the transaction (and had to relist his property) when he realized that "something was up." He encountered difficulty selling the unit because he had to disclose what he knew about the investigation and because of the downturn in the real estate market. Ultimately, he accepted a $410,000 offer and he is seeking to be listed as a restitution victim. Although the Undersigned is sympathetic to his situation,

CASE NO.: 09-20628-CR-GRAHAM/GOODMAN

## V.    RECOMMENDATIONS

The Undersigned therefore respectfully recommends that:

1. The District Court **deny** Rodriguez's Motion for Resentencing [ECF No. 1231].

2. The District Court **deny as moot** the Government's Motion for Hearing on Restitution [ECF No. 1274].

3. The District Court **enter an amended judgment** to include the specific amount of $7,941,854.42 for restitution, as follows:

> Nelida Rodriguez shall pay joint and several restitution with the codefendants in this case *and* with Magile Cruz in Case 08-cr-20770-King, in the amount of $7,941,854.42. During the period of incarceration, payment shall be made as follows: (1) if the defendant earns wages in a Federal Prison Industries (UNICOR) job, then she must pay 50% of wages earned toward the financial obligations imposed by the Amended Judgment; (2) if the defendant does not work in a UNICOR job, then the defendant must pay a minimum of $25.00 per quarter towards the financial obligations imposed in this order.
>
> Upon release from incarceration, the defendant shall pay at the rate of 10% of monthly gross earnings, until such time as the Court may alter that payment schedule in the interests of justice. The U.S. Bureau of Prisons, U.S. Probation Office and U.S. Attorney's Office shall monitor the payment of restitution and report to the Court any material change in the defendant's ability to pay. These payments do not preclude the government from using any other anticipated or unexpected financial gains, assets or income of the defendant to satisfy the restitution obligations. The

---

he does not have standing to be included as a restitution recipient victimized by the fraud. He is an indirect, collateral victim of the crime, but that status is insufficient to generate a basis for restitution.

CASE NO.: 09-20628-CR-GRAHAM/GOODMAN

restitution shall be made payable to Clerk, United States Courts, and forwarded to:

U.S. COURT CLERK'S OFFICE
ATTN: FINANCIAL SECTION
400 N. MIAMI AVENUE, RM 8NO9
MIAMI, FL 33128

The restitution will be forwarded by the Clerk of the Court to the victims listed below:

| | |
|---|---|
| AAMES | $367,500.00 |
| ARGENT | $796,835.31 |
| CERTIFIED HOME LOANS | $3,947,954.26 |
| FIRST NLC | $690,952.60 |
| FREMONT | $84,837.95 |
| POPULAR MORTGAGE | $416,740.81 |
| WILMINGTON FINANCE | $1,637,033.49 |

CASE NO.: 09-20628-CR-GRAHAM/GOODMAN

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(a), the Parties have

fourteen (14) days after being served with a copy of this Report and Recommendations

to serve and file written objections, if any, with the District Court. Each Party may file a

response to the other Party's objection within fourteen (14) days of the objection. The

objecting Party may file a reply within seven (7) days. Failure to file timely objections

shall bar the Parties from a de novo determination by the District Court of an issue

covered in this Report and Recommendations and bar the Parties from attacking on

appeal the factual findings contained herein. *Resolution Trust Corp. v. Hallmark Builders,*

*Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993) (citing *LoConte v. Dugger,* 847 F.2d 745, 749-50

(11th Cir. 1988)).

**RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, this 18

day of July, 2012.

Jonathan Goodman
**UNITED STATES MAGISTRATE JUDGE**

**Copies furnished to:**
The Honorable Donald L. Graham
All counsel of record

26